UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY L. LINDSEY, JR., <br><br> Plaintiff, <br><br> v. <br><br> WMK, LLC d/b/a MOBILITYWORKS, <br><br> Defendant. | Civil Action No. |

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Jeffrey L. Lindsey, Jr. ("Mr. Lindsey" or "Plaintiff"), by and through undersigned counsel, and complains against the Defendant, WMK, LLC d/b/a MobilityWorks ("WMK, LLC" or "MobilityWorks" or "Defendant"), as follows:

JURISDICTION AND PARTIES

1. This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*

2. Mr. Lindsey is a United States citizen residing in Bangor, Maine.

3. WMK, LLC is a limited liability corporation doing business in Maine. Its principal home office is in Richfield, Ohio.

4. WMK, LLC had 15 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

5. WMK, LLC had over 1,500 employees in 2022 and 2023.

6. The amount in controversy exceeds $75,000.

7. This Court has subject matter jurisdiction over Mr. Lindsey's federal and state claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

8. On June 26, 2023, Mr. Lindsey filed a timely Complaint/Charge of Discrimination against Defendant alleging unlawful disability discrimination and retaliation with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

9. On or about February 23, 2024, the MHRC issued a Notice of Right to Sue with respect to Mr. Lindsey's state law claims.

10. On or about February 29, 2024, the EEOC issued a Notice of Right to Sue with respect to Mr. Lindsey's federal law claims.

11. Mr. Lindsey has exhausted his administrative remedies with respect to all claims set forth in this Complaint.

## JURY TRIAL REQUESTED

12. Mr. Lindsey requests a trial by jury for all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

13. MobilityWorks is a provider of late-model and pre-owned wheelchair vans and handicap accessible vehicles with over 90 locations in the United States.

14. Mr. Lindsey started working for Advanced Modifications in Hermon, Maine, as a service technician in about April 2021.

15. MobilityWorks acquired Advanced Modifications in December 2021.

16. Mr. Lindsey continued working in the same job at the same location with the same date of hire for tenure purposes during and after this acquisition.

17. In January 2022, Mr. Lindsey was promoted to Service Manager.

18. Mr. Lindsey's base salary was $1,000 per week plus bonuses.

19. Mr. Lindsey reported to Regional Service Manager John Williams.

20. Mr. Lindsey supervised one or two Service Technicians and one porter.

21. As Service Manager, Mr. Lindsey was in charge of all service department operations. He provided customer service and ensured the quality of service performed by technicians.

22. The essential functions of the Service Manager position were listed in the job description.

23. Mr. Lindsey has type II diabetes.

24. On November 1, 2022, Mr. Lindsey passed out at work and hit his head on a chair. He woke up but was "out of it" for five to 10 minutes. The episode was preceded by a sensation of tremendous fatigue and Mr. Lindsey seeing spots before his eyes.

25. Mr. Lindsey subsequently had several similar episodes, to a lesser degree.

26. Mr. Lindsey started a medical leave of absence on November 2, 2022, and formally applied for a leave on November 7, 2022.

27. At the time, Mr. Lindsey's estimated return to work date was December 2, 2022.

28. Mr. Lindsey's request for medical leave was approved.

29. Mr. Lindsey was eligible for Short Term Disability ("STD") benefits and communicated about his leave with MobilityWorks' STD vendor, Lincoln Financial Group ("Lincoln").

30. During Mr. Lindsey's leave he was seen by medical specialists, including a neurologist and a cardiologist, to determine whether diabetes was the cause of his impairment, or whether it was caused by something else.

31. Mr. Lindsey's medical providers are still unsure of the causes of his symptoms. The current hypothesis is that it was due to an inner ear imbalance with possible cardiovascular issues.

32. Mr. Lindsey kept in touch with Lincoln and MobilityWorks when he needed to extend his leave beyond December 2, 2022.

33. In January 2023, Mr. Lindsey touched base with Mr. Williams to provide an update on his status. It was a brief conversation. Mr. Lindsey told Mr. Williams he expected to be released to return to work soon.

34. Mr. Williams told Mr. Lindsey he was not concerned about Mr. Lindsey's absence.

35. Mr. Wiliams also said that he was not in control of decisions about Mr. Lindsey's medical leave.

36. Defendant claimed that Mr. Williams told Mr. Lindsey that he could not hold the Service Manager position open indefinitely.

37. This is false.

38. Defendant claims that Mr. Williams told Mr. Lindsey that he was going to have to try to fill the Service Manager position with someone else.

39. This is false.

40. Defendant told the MHRC that after the call with Mr. Lindsey in January 2023, Mr. Williams began searching for candidates to fill the Service Manager position, identified a potential candidate, conducted an initial interview, and scheduled a follow-up interview, but cancelled the follow-up interview when he learned that Mr. Lindsey had contacted Ms. Pelfrey

and told her he expected to return to work soon. Defendant did not provide the MHRC with documents and communications relating to and reflecting these allegations.

41. On about February 7, 2023, Mr. Lindsey's medical provider released him to return to work with the restriction of no driving for three months.

42. Mr. Lindsey supplied a medical note to Defendant releasing him to return to work with the restriction of no driving for three months.

43. Defendant would not let Mr. Lindsey return to work.

44. Defendant claims that Mr. Williams made the decision and that the reason Mr. Lindsey was not allowed to return to work is because driving and having a valid driver's license were essential functions of the Service Manager job.

45. Rebecca Pelfrey, Human Resources Manager, told Mr. Lindsey and Lincoln that "leadership" would not permit Mr. Lindsey to return to work with the accommodation of not driving for three months.

46. Mr. Lindsey had never been required to drive a vehicle during the entire time he worked for Defendant as the Service Manager

47. Mr. Lindsey discussed his job duties with Ms. Pelfrey and pushed for permission to return to work.

48. MobilityWorks refused.

49. Ms. Pelfrey told Mr. Lindsey that they were going to post his job and if the job was not filled by the time Mr. Lindsey was released to return to work without restrictions, he could have his job back.

50. During the last week of February 2023, one of Mr. Lindsey's direct reports called and told Mr. Lindsey that a new Service Manager had been hired.

51. According to Defendant, MobilityWorks identified a candidate to fill the Service Manager position on March 23, 2023, and hired Samra Huntley as the Service Manager on March 6, 2023.

52. These dates do not make sense; the date of hire could not precede the date when the candidate was identified.

53. On May 2, 2023, Ms. Pelfrey called Mr. Lindsey and asked about his status.

54. Mr. Lindsey told Ms. Pelfrey that he was seeing his medical provider on May 5, 2023, and that he expected to be cleared to work without restrictions at that time.

55. Mr. Lindsey asked if Ms. Pelfrey knew what was going to happen next. She told Mr. Lindsey that she would reach out to his manager to find out if his position was still open or if any position was available for him.

56. Mr. Lindsey told Ms. Pelfrey that another employee had informed him that his position was filled.

57. Ms. Pelfrey said, again, that they would look at next steps after Mr. Lindsey was cleared without restrictions.

58. Mr. Lindsey saw his medical provider on May 5, 2023, and was cleared to return to work immediately without restrictions.

59. Mr. Lindsey emailed the medical note to Ms. Pelfrey.

60. Ms. Pelfrey called Mr. Lindsey when she got his email and the medical note. She told Mr. Lindsey that his position was filled and that the only position available was a part-time, on-call driver's job, paying $14 per hour.

61. The driver's job paid substantially less than the Service Manager position.

62. Mr. Lindsey believed that there were better paying jobs available that Ms. Pelfrey did not mention to Mr. Lindsey, including a vacant sales position that he was qualified for and not offered.

63. In its submission to the MHRC, Defendant admitted that there was an opening for a Home Access (HA) Technician when Mr. Lindsey was released to return to work without restrictions.

64. Defendant claims that Mr. Lindsey was not told about the HA Technician job because he was not qualified, which is false.

65. Mr. Lindsey was qualified for the HA Technician job, and was not offered the position, due to disability discrimination and retaliation for taking medical leave.

66. Ms. Pelfrey sent Mr. Lindsey an email and letter dated May 15, 2023, that read, in part:

> "Due to your position being filled, you are being granted a period of thirty (30) days to apply for other opportunities within the company. You will remain in an unpaid/active status during this period of time. If you are a full-time team member, your benefits will remain during this 30-day period. Job openings can be found on the MobilityWorks Career website at https://www.mobilityworks.com/careers/.
>
> If you are unable to secure another position by 6/5/2023, you will be removed from role. Please reach out to Rebecca Pelfrey at 216-930-6590 if you have any questions."

67. Mr. Lindsey did not secure another position and MobilityWorks terminated his employment on about June 8, 2023.

68. Ms. Pelfrey emailed a termination letter to Mr. Lindsey on June 13, 2023.

69. Defendant contends that having a driver's license is a qualification for the Service Manager job.

70. Mr. Lindsey always had a valid driver's license during these events. Thus, Mr. Lindsey met this purported qualification for the Service Manager job when he was released to return to work in February 2023.

71. Having a driver's license was not required to perform the essential functions of the Service Manager job.

72. Defendant contends that driving is one of the essential functions of the Service Manager job, which Plaintiff disputes.

73. As set out in EEOC's Title I Technical Assistance Manual at 2.3(a), the factors to consider when determining whether a job duty – such as driving - is an essential function are listed below, along with information relevant to the Service Manager position:

74. Whether the reason the position exists is to perform that function.

   a. The Service Manager position does not exist to employ someone who drives.

75. The number of other employees available to perform the function or among whom the performance of the function can be distributed.

   a. Defendant admits that seven or eight employees worked at the MobilityWorks location in Hermon. This included two technicians, one porter, the Service Manager, an administrator, two salespeople, and Mr. Williams (two days per week). Any one of them could move cars in and out of the service bays.

76. The degree of expertise or skill required to perform the function.

   a. Upon information and belief, all seven employees had valid drivers' licenses and could drive.

77. Sources of evidence that should be taken into consideration when determining if a job duty is essential are listed below.

78. The employer's judgment as to which functions are essential.

    a. Defendant asserts that driving is an essential function, but this is only one factor to consider and is inconsistent with the evidence of how the job was actually performed and is clearly a position taken in the context of this litigation.

79. The preexisting written job description.

    a. The preexisting job description does not state that driving is an essential function of the Service Manager position.

80. The actual work experience of present or past employees in the job.

    a. Defendant claims that during a typical workday, vehicles are constantly being driven into and out of the service bays. Mr. Lindsey disputes this. He is a past employee in the Service Manager job and in his actual work experience, he never needed to drive a car as part of his Service Manager job. The type of work they performed on vehicles, converting and refurbishing them to make them accessible, often took one to two days. There was not a constant need to move vehicles.

    b. Upon information and belief, when Mr. Lindsey was on medical leave, the technicians and porter moved vehicles in and out of the service bays without his assistance, and it did not cause any problems.

    c. Samra Huntley is the employee who replaced Mr. Lindsey as the Service Manager in Hermon. (Mr. Lindsey knows her as Beth.) Upon information and belief, Ms. Huntley does not often drive vehicles as part of her job duties.

81. The time spent performing a function.

    a. In Mr. Lindsey's experience, it was never necessary for him to drive while he worked as a Service Manager. He acknowledges that, to increase productivity and foster teamwork, he occasionally helped the crew by driving vehicles. The amount of time he spent driving was perhaps one to two hours per month. All of the other employees could drive and so it was not necessary for Mr. Lindsey to do so.

82. The consequences of not requiring that an employee perform a function.

    a. Defendant claims that Mr. Lindsey was often the only person working at the location, which is false.

    b. The only time all or nearly all employees were absent was one week when multiple people contracted COVID-19.

    c. In addition, no work should be performed on vehicles without another person present. It is a safety hazard for someone to work alone.

    d. Defendant also claims that the Service Manager must road test vehicles, which is false. One of the technicians, Rob Thew, is a Master Technician and was the only one qualified to perform road tests and certify that a vehicle met National Mobility Equipment Dealers Association standards.

    e. Upon information and belief, Ms. Huntley does not perform road tests and does not certify that a vehicle met National Mobility Equipment Dealers Association standards.

83. The terms of a collective bargaining agreement.

There is no collective bargaining agreement between Defendant and its employees.

84. Defendant also states that the Service Manager would sometimes have to work on vehicles as a technician.

    a. Mr. Lindsey disputes this. Mr. Lindsey happens to have the skill and expertise to work as a technician. To increase productivity and foster teamwork, he occasionally worked alongside the other technicians on a vehicle.

    b. Upon information and belief, the current Service Manager, Ms. Huntley, does not have the skill or expertise to perform technician work.

85. Mr. Lindsey has a disability under the ADA and MHRA. He has type II diabetes. He was dizzy and passed out at work in November 2022. He remained dizzy the following day when he went to the hospital emergency room for treatment. He continued to have episodes about once a week, lasting a couple of hours, when he was lightheaded, dizzy, and felt the room spin, followed by feelings of sweatiness and exhaustion afterwards. After some of these episodes, he would fall asleep. Mr. Lindsey's impairment, whatever the cause, substantially limited his balance and cognitive functioning as well as the major life activity of working during an episode.

86. Mr. Lindsey was regarded as disabled by MobilityWorks, i.e., Defendant understood that he had an impairment and considered him a less valuable and less capable employee because of his impairment.

87. MobilityWorks violated Mr. Lindsey's rights under the ADA and the MHRA by refusing to allow him to return to work on February 7, 2023, when his medical provider released him to return to work with the restriction of no driving for three months.

88. Driving is not an essential function of the Service Manager job and Mr. Lindsey could have returned to work without any modifications to his job duties or other accommodations.

89. MobilityWorks' refusal to permit Mr. Lindsey to return to work until he had no restrictions constituted discrimination against him, both because of his disability and because MobilityWorks regarded him as a person with a disability.

90. MobilityWorks' refusal to permit Mr. Lindsey to return to work on February 7, 2023 violated his rights under the MHRA and ADA to be free from discrimination.

91. MobilityWorks' unlawful refusal to permit Mr. Lindsey to return to work on February 7, 2023, resulted in him remaining unemployed for the subsequent months and also proximately caused the permanent loss of Mr. Lindsey's position.

92. Alternatively, it was not an undue burden on MobilityWorks to accommodate Mr. Lindsey for three months with a "no driving" restriction.

93. MobilityWorks engaged in unlawful retaliation under the ADA and the MHRA by treating Mr. Lindsey differently and less favorably because he requested reasonable accommodation.

94. MobilityWorks violated Mr. Lindsey's rights under the MHRA and ADA by refusing to provide him with three more months of medical leave, from February 7 to May 7, 2023, when he could have returned to work without a driving restriction.

95. MobilityWorks violated Mr. Lindsey's rights under the MHRA and ADA by failing to transfer him to the HA Tech position or another position similar to the Service Manager job in duties and pay when he was released to return to work without restrictions on May 7, 2023.

96. Allowing Mr. Lindsey to apply for other positions within the company was not a reasonable accommodation because it did not involve any change in Defendant's normal process made available to all applicants.

97. Even if allowing Mr. Lindsey to apply for other positions in the company was considered a reasonable accommodation it was clearly inadequate as it left him without his own job or a comparable job.

98. Defendant discriminated against Plaintiff, a person with a disability and a qualified individual with a disability, in regard to the terms, conditions, and privileges of employment.

99. Defendant utilized standards and criteria that had the effect of discriminating on the basis of disability, i.e., the requirement that Plaintiff be able to drive before returning to work as the Service Manager.

100. Defendant failed to make reasonable accommodations to the known physical limitations of Plaintiff, an otherwise qualified individual with a disability who was an employee, and Defendant cannot demonstrate that the accommodation would impose an undue hardship on the operation of its business.

101. Defendant refused to allow Plaintiff to return to work as the Service Manager, refused to transfer him to a vacant position for which he was qualified, and terminated his employment in retaliation for Plaintiff requesting reasonable accommodation for his disability.

102. Plaintiff suffered economic losses as a result of Defendant's discrimination and retaliation.

103. Defendant's discrimination and retaliation has caused Plaintiff substantial stress, anxiety, and humiliation and other non-economic damages.

104. Defendant knowingly violated Plaintiff's state and federal rights and/or violated Plaintiff's rights with reckless indifference and so are liable for punitive damages.

## COUNT I: ADA - DISABILITY DISCRIMINATION

105. Paragraphs 1-104 are incorporated by reference.

106. Defendant's conduct violates the ADA's prohibition against disability discrimination.

107. Defendant's conduct violates the ADA's requirement that employers provide reasonable accommodations to employees.

## COUNT II: ADA - RETALIATION

108. Paragraphs 1-107 are incorporated by reference.

109. Defendant engaged in unlawful retaliation against Plaintiff in violation of the ADA.

## COUNT III: MHRA - DISABILITY DISCRIMINATION

110. Paragraphs 1-109 are incorporated by reference.

111. Defendant's conduct violates the MHRA's prohibition against disability discrimination.

112. Defendant's conduct violates the MHRA's requirement that employers provide reasonable accommodations to employees.

## COUNT IV: MHRA - RETALIATION

113. Paragraphs 1-112 are incorporated by reference.

114. Defendant engaged in unlawful retaliation against Plaintiff in violation of the MHRA.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendant to be in violation of his rights;

B. Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

C. Order Defendant to reinstate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendant's discrimination;

E. Award equitable-relief for back pay, benefits and prejudgment interest;

F. Award compensatory damages in an amount to be determined at trial;

G. Award punitive damages in an amount to be determined at trial;

H. Award nominal damages;

I. Award attorneys' fees, including legal expenses, and costs;

J. Award prejudgment interest;

K. Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability or retaliation;

L. Require Defendant to mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate discrimination or retaliation in the future;

M. Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

N. Require that Defendant train all management level employees on the protections afforded by the ADA and MHRA;

O. Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant unlawfully terminated him because of disability and retaliation; and

P. Grant to Plaintiff such other and further relief as may be just and proper.

Dated: May 28, 2024　　　　　　　　　　　　　　/s/ Chad T. Hansen
　　　　　　　　　　　　　　　　　　　　　　　Chad T. Hansen

　　　　　　　　　　　　　　　　　　　　　　　Attorney for the Plaintiff

　　　　　　　　　　　　　　　　　　　　　　　EMPLOYEE RIGHTS GROUP
　　　　　　　　　　　　　　　　　　　　　　　92 Exchange Street 2nd floor
　　　　　　　　　　　　　　　　　　　　　　　Portland, Maine 04101
　　　　　　　　　　　　　　　　　　　　　　　Tel. (207) 874-0905
　　　　　　　　　　　　　　　　　　　　　　　Fax (207) 874-0343
　　　　　　　　　　　　　　　　　　　　　　　Chad@EmployeeRightsLaw.Attorney